UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

Juan Alfonso Nuno Velasco,

                Plaintiff

v.

Dennis Balaam, *et al.*,

                Defendants

Case No. 2:23-cv-00192-CDS-DJA

**Screening Order**

Incarcerated pro se plaintiff Juan Velasco ("Velasco"), who is in the custody of the Nevada Department of Corrections ("NDOC"), has submitted a civil rights complaint ("Complaint") under 42 U.S.C. § 1983, an application to proceed *in forma pauperis*, a motion seeking the appointment of counsel, and a motion seeking miscellaneous relief. ECF Nos. 1, 1-1, 2, 5. I now screen Plaintiff's Complaint under 28 U.S.C. § 1915A, dispose of the motions, and grant Plaintiff's application to proceed *in forma pauperis*.

I.    SCREENING STANDARD

Federal courts must conduct a preliminary screening in any case in which an incarcerated person seeks redress from a governmental entity or officer or employee of a governmental entity. *See* 28 U.S.C. § 1915A(a). In its review, the court must identify any cognizable claims and dismiss any claims that are frivolous, malicious, fail to state a claim upon which relief may be granted, or seek monetary relief from a defendant who is immune from such relief. *See id.* § 1915A(b)(1), (2). *Pro se* pleadings, however, must be liberally construed. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two essential elements: (1) the violation of a right secured by the Constitution or laws of the United States, and (2) that the alleged violation was committed by a person acting under color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988).

In addition to the screening requirements under § 1915A, pursuant to the Prison Litigation Reform Act ("PLRA"), a federal court must dismiss an incarcerated person's claim if "the allegation of poverty is untrue" or if the action "is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2). Dismissal of a complaint for failure to state a claim upon which relief can be granted is provided for in Federal Rule of Civil Procedure 12(b)(6), and the court applies the same standard under § 1915 when reviewing the adequacy of a complaint or an amended complaint. When a court dismisses a complaint under § 1915(e), the plaintiff should be given leave to amend the complaint with directions as to curing its deficiencies, unless it is clear from the face of the complaint that the deficiencies could not be cured by amendment. *See Cato v. United States*, 70 F.3d 1103, 1106 (9th Cir. 1995).

Review under Rule 12(b)(6) is essentially a ruling on a question of law. *See Chappel v. Lab. Corp. of Am.*, 232 F.3d 719, 723 (9th Cir. 2000). Dismissal for failure to state a claim is proper only if it is clear that the plaintiff cannot prove any set of facts in support of the claim that would entitle him or her to relief. *See Morley v. Walker*, 175 F.3d 756, 759 (9th Cir. 1999). In making this determination, the court takes as true all allegations of material fact stated in the complaint, and the court construes them in the light most favorable to the plaintiff. *See Warshaw v. Xoma Corp.*, 74 F.3d 955, 957 (9th Cir. 1996). Allegations of a *pro se* complainant are held to less stringent standards than formal pleadings drafted by lawyers. *See Hughes v. Rowe*, 449 U.S. 5, 9 (1980). While the standard under Rule 12(b)(6) does not require detailed factual allegations, a plaintiff must provide more than mere labels and conclusions. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A formulaic recitation of the elements of a cause of action is insufficient. *Id.*

Additionally, a reviewing court should "begin by identifying pleadings [allegations] that, because they are no more than mere conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). "While legal conclusions can provide the framework of a complaint, they must be supported with factual allegations." *Id.* "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they

plausibly give rise to an entitlement to relief." *Id.* "Determining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

Finally, all or part of the complaint filed by an incarcerated person may therefore be dismissed *sua sponte* if that person's claims lack an arguable basis either in law or in fact. This includes claims based on legal conclusions that are untenable (e.g., claims against defendants who are immune from suit or claims of infringement of a legal interest which clearly does not exist), as well as claims based on fanciful factual allegations (e.g., fantastic or delusional scenarios). *See Neitzke v. Williams*, 490 U.S. 319, 327–28 (1989); *see also McKeever v. Block*, 932 F.2d 795, 798 (9th Cir. 1991).

II.   SCREENING OF COMPLAINT[1]

In the Complaint, Velasco sues multiple defendants for events that took place in 2002, which involved his extradition from California to Nevada.[2] ECF No. 1-1 at 1-3. Plaintiff sues defendants John Doe Governor of Nevada, Sheriff Dennis Balaam, and John and Jane Does 1-10.[3] *Id.* at 1. Velasco brings six claims and seeks monetary damages. *Id.* at 4-12. I will address each claim in turn.

A.   Claim 1

According to the allegations in claim 1, in 2002, Velasco, "an illegal alien" from Mexico, was apprehended in California. *Id.* at 4. At the time of his arrest, Velasco did not speak English. *Id.* On July 26, 2002, Velasco was extradited to Nevada, arriving at the Washoe County Detention Center. *Id.* Velasco had been charged with the following crimes: "murder, robbery with the use of a firearm, and kidnapping in the first degree." *Id.* According to Velasco, Sheriff Balaam and the other agents failed to inform him of his right to notify the Mexican consulate in violation of the Vienna Convention. *Id.* Velasco did, however, receive a lawyer and an interpreter

---

[1] Inmate Carlos Ruiz helped Velasco prepare the Complaint. ECF No. 1-1 at 12.
[2] Velasco currently resides at Southern Desert Correctional Center ("SDCC"). *Id.* at 1.
[3] Velasco does not list Doe Governor of Nevada as a defendant in the caption of the case, but the allegations in the Complaint treat him as a defendant.

for his case. *Id.* If Sheriff Balaam had notified Velasco of his right to notify the Mexican consulate, Velasco claims that the consulate could have conducted its own investigation into his case and provided him with additional legal aid. *Id.*

In claim 1, Velasco raises a claim under Article 36 of the Vienna Convention. I, however, dismiss this claim with prejudice, as amendment would be futile, because the Ninth Circuit has held that Article 36 of the Vienna Convention provides no private right of action under 42 U.S.C. § 1983. *See Cornejo v. County of San Diego*, 504 F.3d 853, 855 (9th Cir. 2007). In its decision, the Ninth Circuit held that "Article 36 does not create judicially enforceable rights. Article 36 confers legal rights and obligations on *States* in order to facilitate and promote consular functions." *Id.* Therefore, I dismiss this claim with prejudice, as amendment would be futile.

  **B.**  **Claim 2**

In claim 2, Velasco alleges that, before his extradition to Nevada, he was being held at the Fresno County Sheriff's Office in California. ECF No. 1-1 at 5. Doe Governor of Nevada then ordered Sheriff Balaam to move Velasco from California to Nevada without a hearing. *Id.* In claim 2, Velasco raises claims under the Interstate Agreement on Detainers ("IAD") and California's version of the Uniform Criminal Extradition Act ("UCEA") for the failure of Sheriff Balaam to provide Velasco with a hearing before the extradition from California to Nevada. *Id.*

"A claim under section 1983 is available to redress violations of federal statutory and constitutional law." *Ghana v. Pearce*, 159 F.3d 1206, 1208 (9th Cir. 1998). A violation of the UCEA by state or local law enforcement officials supports a cause of action under § 1983. *Draper v. Coombs*, 792 F.2d 915, 920 (9th Cir. 1986). Forty-eight States, Puerto Rico, and the Virgin Islands have adopted the UCEA, which provides procedures for the interstate transfer of persons with outstanding criminal charges. *Cuyler v. Adams*, 449 U.S. 433, 435 n.1 (1981). California is one of the States to have adopted its own version of the UCEA. *See generally* Cal. Pen. Code §§ 1548-1558. A violation of California's version of the UCEA "can serve as the basis of a section 1983 action where the violation of state law causes the deprivation of rights protected by the Constitution and statutes of the United States." *Draper*, 792 F.2d at 921 (internal quotations omitted).

California's version of the UCEA states that there must be an "initial appearance" before a magistrate before the extradition occurs. Cal. Pen. Code §§ 1551.2, 1552. At this initial appearance, a magistrate will inform the arrested person of the reason for "the arrest and of his right to demand and procure counsel." Cal. Pen. Code § 1551.2. Finally, the U.S. Supreme Court held in *Cuyler v. Adams* that inmates transferred under the IAD have a right to procedural safeguards, including a pre-transfer hearing, prescribed by the UCEA. 449 U.S. at 449-50.

I find that Velasco states a colorable claim under the UCEA against Defendants Doe Governor of Nevada and Sheriff Balaam. Liberally construing the allegations in the Complaint, these defendants appeared to have denied Velasco a pre-extradition hearing as required by the UCEA and the IAD. At the screening stage of the litigation, I find that Velasco states a colorable UCEA and IAD claim against Defendants Sheriff Balaam and Doe Governor of Nevada when Velasco learns his identity.[4]

    C.    Claim 3[5]

In claim 3, Velasco states that while he was detained in Fresno, Doe Governor of Nevada authorized Sheriff Balaam to extradite Plaintiff from California to Nevada before Velasco had a "habeas corpus" hearing before a magistrate. ECF No. 1-1 at 6. In this claim, Velasco contends that his rights under the IAD, California's version of the UCEA, and 18 U.S.C. § 3182 were violated.[6] I dismiss this claim as duplicative because it functionally raises the same issue as the claim in claim 2. In claim 2, Velasco states that he did not have a pre-extradition hearing, and in this claim, Velasco claims that he did not receive a "habeas corpus hearing" before his extradition. These claims are materially identical because they both state that Velasco did not

---

[4] Although the use of "Doe" to identify a defendant is not favored, flexibility is allowed in some cases where the identity of the parties will not be known prior to filing a complaint but can subsequently be determined through discovery. *Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980). If the true identity of any of the Doe Defendant(s) comes to light during discovery, Velasco may move to substitute the true names of Doe Defendant(s) to assert claims against the Doe Defendant(s) at that time.

[5] The standard for stating a claim under California's UCEA is discussed in Section II B.

[6] I dismiss Velasco's claim under 18 U.S.C. § 3182 with prejudice because this provision of the U.S. Code does not state that a person subject to extradition has a right to a writ of habeas corpus. This provision deals with the steps the executive authority of a state requesting the extradition of a fugitive must make prior to the extradition. *See generally* 18 U.S.C. § 3182.

have a hearing before his extradition to Nevada. I therefore dismiss this claim without prejudice without leave to amend because Velasco is pursuing this claim in claim 2. To the extent that Velasco is attempting to raise a habeas corpus claim, I dismiss this claim without prejudice but without leave to amend in this case because a habeas claim may not be brought under § 1983. *See Nettles v. Grounds*, 830 F.3d 922, 927 (9th Cir. 2016) (reiterating that the Supreme Court has "long held that habeas is the exclusive vehicle for claims brought by state prisoners that fall within the core of habeas, and such claims may not be brought in a § 1983 action").

D.     Claim 4

In claim 4, Velasco alleges that he had the right to counsel during all stages of the extradition process, and Velasco did not receive counsel until he arrived in Nevada. ECF No. 1-1 at 7. Velasco claims that the lack of access to counsel prejudiced him during the extradition because he did not have any knowledge about the process. *Id.* In this claim, Velasco contends that the defendants violated the following laws and constitutional provisions: the IAD,[7] the UCEA, Article I §§ 3, 6, 7,8 of the Nevada Constitution,[8] and the Fifth, Sixth, Seventh, and Fourteenth Amendments of the U.S. Constitution.[9] *Id.*  The Court construes this claim as a claim under California's version of the UCEA and the Sixth Amendment of the U.S. Constitution.

There is a statutory right to counsel at the California extradition proceedings under California's version of the UCEA. *See* Cal. Pen. Code § 1551.2 (indicating that a magistrate must

---

[7] I dismiss Velasco's IAD claim with prejudice, as amendment would be futile. There are no provisions in the IAD that give Plaintiff the right to counsel at extradition proceedings. *Cuyler v. Adams*, 449 U.S. 433, 443 (1981) (holding that "no . . . explicit provision" is to be found in the IAD granting the right to counsel to extradited inmates).

[8] I dismiss Velasco's claims under the Nevada Constitution with prejudice, as amendment would be futile, because none of the provisions that he cites relate to the right of access to counsel. For example, Article I § 3 states that the right to a jury shall remain forever; Article I § 6 deals with excessive bail and fines and the right to be free from cruel and unusual punishment; Article I § 7 states that all persons shall have access to bail, "unless for Capital Offenses or murders punishable by life imprisonment without possibility of parole when the proof is evident or the presumption great"; and Article I § 8 only provides a right to counsel in cases involving a "capital or other infamous crime".

[9] I dismiss Velasco's claims under the Fifth, Seventh, and Fourteenth Amendments of the U.S. Constitution with prejudice because these amendments do not relate to the right of access to counsel. *See Castillo v. McFadden*, 399 F.3d 993, 1005 n.5 (9th Cir. 2005) (explaining that "[t]he Fifth Amendment prohibits the federal government from depriving person of due process, while the Fourteenth Amendment explicitly *(fn. cont...)*

inform the arrested person of "his right to demand and procure counsel"). Extradition proceedings do not, however, constitute a "critical stage" where the Sixth Amendment right to counsel attaches. *See Anderson v. Alameida*, 397 F.3d 1175, 1180-81 (9th Cir. 2005) (stating that the right to counsel under the Sixth Amendment does not "attach[] at arrest or at an extradition hearing.").

I find that Velasco states a colorable claim under California's version of the UCEA, but I find that Velasco fails to state a colorable claim under the Sixth Amendment. Because Velasco's right to counsel is purely statutory, his reliance on the Sixth Amendment is unavailing and misplaced. I therefore dismiss Velasco's Sixth Amendment claim with prejudice, as amendment would be futile. Velasco does, however, state a colorable claim under the UCEA because he did not have access to counsel before his extradition to Nevada. This claim will proceed on screening against Sheriff Balaam and Doe Governor of Nevada, when Velasco learns his identity.

### E.     Claim 5

In claim 5, Velasco states that he arrived at the Washoe County Detention Center on July 26, 2002. ECF No. 1-1 at 8. He further argues that under the IAD, he should have been tried on or before November 26, 2002. *Id.* According to the allegations in the Complaint, Velasco's trial ended on December 26, 2002. *Id.* Based on these allegations, Velasco raises claims under the IAD, the UCEA, the Compact Clause of the U.S. Constitution,[10] and Article IV § 2 of the U.S. Constitution. *Id.* As an initial matter for this claim, I dismiss the UCEA and Article IV § 2 claims without prejudice because Velasco is suing about a speedy trial issue under the IAD.

Forty-eight States, the Federal Government, and the District of Columbia have entered into the IAD, 18 U.S.C. APP. § 2. *Alabama v. Bozeman*, 533 U.S. 146, 148 (2001). The IAD is a "congressionally sanctioned interstate compact" and its interpretation presents a question of

---

prohibits deprivations without due process by the several States."); *see also* U.S. Const. amend. VII (providing that "the right of trial by jury be preserved" in "suits at common law").

[10] I dismiss Velasco's Compact Clause claim with prejudice because the Ninth Circuit has determined that a violation of the Compact Clause cannot be a basis for an action brought under § 1983. *Ghana v. Pearce*, 159 F.3d 1206, 1208-09 (9th Cir. 1998).

federal law. *Cuyler*, 449 U.S. at 442. A plaintiff may bring a 42 U.S.C. § 1983 claim against state officials for violations of the IAD. *See id.* at 449 (holding that the respondent stated a claim for relief under 42 U.S.C. § 1983 by alleging that state officials violated the terms of the IAD).

"The [IAD] creates uniform procedures for lodging and executing a detainer, i.e., a legal order that requires a State in which an individual is currently imprisoned to hold that individual when he has finished serving his sentence so that he may be tried by a different State for a different crime." *Alabama*, 533 U.S. at 148. "The [IAD] provides for expeditious delivery of the prisoner to the receiving State. And it seeks to minimize the consequent interruption of the prisoner's ongoing prison term." *Id.*

The IAD "establishes two procedures under which the prisoner against whom a detainer has been lodged may be transferred to the temporary custody of the receiving State." *Cuyler*, 449 U.S. at 443. Article III of the IAD permits the prisoner to invoke the procedures, while Article IV permits the prosecuting attorney of the receiving State to invoke procedures. *Id.* Article III "requires the warden to notify the prisoner of all outstanding detainers and then to inform him of his right to request final disposition of the criminal charges underlying those detainers. If the prisoner initiates the transfer by demanding disposition (which under the IAD automatically extends to all pending charges in the receiving State), the authorities in the receiving State must bring him to trial within 180 days or the charges will be dismissed with prejudice, absent good cause shown." *Cuyler*, 449 U.S. at 444; *see* 18 U.S.C. § APP. 2 § 2, art. III.

I find that Velasco fails to state a colorable speedy trial issue under the IAD. First, the Complaint does not allege that he attempted to initiate his transfer by demanding disposition under Article III of the IAD, which would trigger the 180-day deadline for the receiving State to bring him to trial. Second, even if Velasco had attempted to trigger Article III of the IAD, the receiving State, Nevada, brought him to trial within the 180-day deadline. Velasco claims that he was extradited to Nevada on July 26, 2002, and that his trial finished on December 26, 2002. Using these dates, Velasco's trial concluded 153 days after his extradition, which is within the

180-day deadline. Therefore, I dismiss Velasco's speedy trial claim under the IAD with prejudice, as amendment would be futile.

### F. Claim 6

In claim 6, Velasco claims that the Doe Governor of Nevada and Sheriff Balaam made numerous mistakes under the executive agreement regarding Velasco's transfer from California to Nevada. ECF No. 1-1 at 9. For example, he states that these defendants never informed him about the existence of the executive agreement, and they failed to provide him with an attorney during the extradition. *Id.*

Based on these allegations, Velasco raises claims under the IAD, UCEA, Article IV § 2 of the U.S. Constitution, and 18 U.S.C. § 3182. I dismiss Velasco's claim because he has already raised the access to counsel issue in claim 4, and the remainder of his claim relates to the Executive Agreement. The U.S. Supreme Court has held, in various contexts, that executive agreements are only reviewable "when a private right of action is afforded." *Medellin v. Texas*, 552 U.S. 491, 506 N.3 (2008). The terms of the Executive Agreement do not appear to provide a private right of action (ECF No. 1-1 at 16-18), and Velasco states in a conclusory manner that the failure to provide him with the Executive Agreement violated the IAD, the UCEA, 18 U.S.C. § 3182, and Article IV § 2 of the U.S. Constitution. I therefore dismiss this claim without prejudice.

## III. MOTIONS (ECF NOS. 2, 5)

### A. Motion for Appointment of Counsel (ECF No. 2)

Velasco files a motion seeking the appointment of counsel. ECF No. 2. In his motion, he asks the Court to appoint counsel for him because the subject matter of the litigation is complex, and he could not conduct discovery while incarcerated. *Id.* at 2.

A litigant does not have a constitutional right to appointed counsel in 42 U.S.C. § 1983 civil rights claims. *Storseth v. Spellman*, 654 F.2d 1349, 1353 (9th Cir. 1981). Pursuant to 28 U.S.C. § 1915(e)(1), "[t]he court may request an attorney to represent any person unable to afford counsel." However, the court will appoint counsel for indigent civil litigants only in "exceptional circumstances." *Palmer v. Valdez*, 560 F.3d 965, 970 (9th Cir. 2009) (§ 1983 action). "When

determining whether 'exceptional circumstances' exist, a court must consider the likelihood of success on the merits as well as the ability of the petitioner to articulate his claims *pro se* in light of the complexity of the legal issues involved." *Id*. "Neither of these considerations is dispositive and instead must be viewed together." *Id*.

In the instant case, I do not find exceptional circumstances that warrant the appointment of counsel at this time. Like many prisoners filing civil rights actions in this Court, Velasco alleges that he has complex claims. It is premature to assess the likelihood of success in this case as the screening of the Complaint just occurred. Finally, all prisoners personally litigating civil rights actions must conduct discovery if the case proceeds to that stage of the litigation. I, therefore, do not find exceptional circumstances that warrant the appointment of counsel and deny the motion without prejudice. ECF No. 2.

### B. Miscellaneous Motion (ECF No. 5)

In his motion, Velasco requests that the NDOC accounting department send a check in the amount of $10.39 to the Clerk's Office. ECF No. 5 at 1-2. I deny Velasco's motion. Velasco will need to follow prison procedures to request that NDOC accounting send this Court specific filing fee payments.

### IV. CONCLUSION

I therefore order that Velasco's application to proceed *in forma pauperis* (ECF No. 1) is granted. Velasco shall not be required to pay an initial installment of the filing fee. In the event that this action is dismissed, the full filing fee must still be paid pursuant to 28 U.S.C. § 1915(b)(2).

I further order that Velasco is permitted to maintain this action to conclusion without the necessity of prepayment of any additional fees or costs or the giving of security therefor.

I further order that, pursuant to 28 U.S.C. § 1915, as amended by the PLRA, the NDOC will forward payments from the account of **JUAN ALFONSO NUNO VELASCO, #96532** to the Clerk of the United States District Court, District of Nevada, 20% of the preceding month's deposits (in months that the account exceeds $10.00) until the full $350 filing fee has been paid

for this action. The Clerk of Court will send a copy of this order to the Finance Division of the Clerk's Office. The Clerk will send a copy of this order to the attention of **Chief of Inmate Services for the Nevada Department of Corrections** at formapauperis@doc.nv.gov.

I further order that the Clerk of Court file the Complaint (ECF No. 1-1) and send Velasco a courtesy copy.

I further order that Velasco's motion seeking the appointment of counsel (ECF No. 2) is denied without prejudice.

I further order that Velasco's motion (ECF No. 5) is denied without prejudice.

I further order that defendants John and Jane Does 1-10 are dismissed from the case without prejudice.

I further order that plaintiff's Vienna Convention claim (claim 1) is dismissed with prejudice, as amendment would be futile.

I further order that plaintiff's IAD claim (claim 2) will proceed against defendants Balaam and Doe Governor of Nevada, when Velasco learns his identity.

I further order that plaintiff's UCEA claim (claim 2) will proceed against defendants Balaam and Doe Governor of Nevada, when Velasco learns his identity.

I further order that plaintiff's claims under the IAD and the UCEA in claim 3 are dismissed without prejudice.

I further order that plaintiff's claim under 18 U.S.C. § 3182 (claim 3) is dismissed with prejudice, as amendment would be futile.

I further order that, to the extent plaintiff attempts to raise a habeas claim in claim 3, it is dismissed without prejudice without leave to amend.

I further order that plaintiff's IAD claim (claim 4) is dismissed with prejudice as amendment would be futile.

I further order that plaintiff's claims under the Nevada Constitution (claim 4) are dismissed with prejudice, as amendment would be futile.

I further order that plaintiff's claims under the U.S. Constitution (claim 4) are dismissed with prejudice, as amendment would be futile.

I further order that plaintiff's UCEA claim (claim 4) will proceed against defendants Balaam and Doe Governor of Nevada, when Plaintiff learns his identity.

I further order that plaintiff's IAD claim (claim 5) is dismissed with prejudice, as amendment would be futile.

I further order that plaintiff's claim under Article IV § 2 of the U.S. Constitution (claim 5) is dismissed without prejudice.

I further order that plaintiff's Compact Clause claim (claim 5) is dismissed with prejudice, as amendment would be futile.

I further order that plaintiff's UCEA claim (claim 5) is dismissed without prejudice.

I further order that plaintiff's claims under the IAD, the UCEA, 18 U.S.C. § 3182, and Article IV § 2 in claim 6 are dismissed without prejudice.

I further order that the Clerk of Court will issue a summons for defendant Sheriff Balaam, and deliver the same, to the U.S. Marshal for service. The Clerk also will send sufficient copies of the Complaint (ECF No. 1-1) and this order to the U.S. Marshal for service on defendant(s).

I further order that the Clerk will send to Velasco **one (1)** USM-285 form. Velasco will have **thirty (30)** days within which to furnish to the U.S. Marshal the required USM-285 forms with relevant information as to each defendant on each form.

I further order that within 20 days after receiving from the U.S. Marshal copies of the USM-285 forms showing whether service has been accomplished, Velasco must file a notice with the Court identifying if defendant Balaam had been served, if at all. If Velasco wishes to have service again attempted on an unserved defendant(s), then a motion must be filed with the Court identifying the unserved defendant(s) and specifying a more detailed name and/or address for said defendant(s), or whether some other manner of service should be attempted.

I further order that Velasco will serve upon defendant Balaam or, if an appearance has been entered by counsel, upon their attorney(s), a copy of every pleading, motion or other document submitted for consideration by the Court. If Velasco electronically files a document with the Court's electronic filing system, no certificate of service is required. *See* Fed. R. Civ. P. 5(d)(1)(B); LR IC 4-1(b); LC 5-1. However, if Velasco mails documents to the Court, Velasco will include with the original document submitted for filing a certificate stating the date that a true and correct copy of the document was mailed to defendant Balaam or his counsel. If counsel has entered a notice of appearance, Velasco will direct service to the individual attorney named in the notice of appearance, at the physical or electronic address stated therein. The Court may disregard any document received by a district judge or magistrate judge that has not been filed with the Clerk of the Court, and any document received by a district judge, magistrate judge, or the Clerk of the Court that fails to include a certificate showing proper service when required.

DATED: July 26, 2023

_____
UNITED STATES DISTRICT JUDGE

13