UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| Juan Nuno Velasco,<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>Sheriff Dennis Balaam,<br><br>　　　　　Defendant. | Case No. 2:23-cv-00192-CDS-DJA<br><br>**Order** |

　　　Before the Court is Plaintiff's motion to amend his complaint. (ECF No. 24). The Court screens Plaintiff's proposed amended complaint under 28 U.S.C. § 1915. Because the Court finds that certain of Plaintiff's allegations do not state a claim upon which relief can be granted, but others do, the Court grants Plaintiff's motion to amend his complaint in part and denies it in part.

**I.　　Legal standard.**

　　　Generally, a party may amend its pleading once "as a matter of course" within twenty-one days of serving it, or within twenty-one days after service of a responsive pleading or motion under Rule 12(b), (e), or (f). Fed. R. Civ. P. 15(a)(1). Otherwise, "a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). "The court should freely give leave when justice so requires." *Id*. "The court considers five factors [under Rule 15] in assessing the propriety of leave to amend—bad faith, undue delay, prejudice to the opposing party, futility of amendment, and whether the plaintiff has previously amended the complaint." *United States v. Corinthian Colls.*, 655 F.3d 984, 995 (9th Cir. 2011).

　　　Additionally, when a party is proceeding *in forma pauperis*, courts screen the complaint under § 1915(e). Federal courts are given the authority to dismiss a case if the action is legally "frivolous or malicious," fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2). When a court dismisses a complaint under § 1915, the plaintiff should be given leave to amend

the complaint with directions as to curing its deficiencies, unless it is clear from the face of the complaint that the deficiencies could not be cured by amendment. *See Cato v. United States*, 70 F.3d 1103, 1106 (9th Cir. 1995).

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for dismissal of a complaint for failure to state a claim upon which relief can be granted. Review under Rule 12(b)(6) is essentially a ruling on a question of law. *See Chappel v. Lab. Corp. of Am.*, 232 F.3d 719, 723 (9th Cir. 2000). A properly pled complaint must provide a short and plain statement of the claim showing that the pleader is entitled to relief. Fed. R. Civ. P. 8(a)(2); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Although Rule 8 does not require detailed factual allegations, it demands "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*citing Papasan v. Allain*, 478 U.S. 265, 286 (1986)). The court must accept as true all well-pled factual allegations contained in the complaint, but the same requirement does not apply to legal conclusions. *Iqbal*, 556 U.S. at 679. Mere recitals of the elements of a cause of action, supported only by conclusory allegations, do not suffice. *Id.* at 678. Where the claims in the complaint have not crossed the line from conceivable to plausible, the complaint should be dismissed. *Twombly*, 550 U.S. at 570. Allegations of a *pro se* complaint are held to less stringent standards than formal pleadings drafted by lawyers. *Hebbe v. Pliler*, 627 F.3d 338, 342 & n.7 (9th Cir. 2010) (finding that liberal construction of *pro se* pleadings is required after *Twombly* and *Iqbal*).

Federal courts are courts of limited jurisdiction and possess only that power authorized by the Constitution and statute. *See Rasul v. Bush*, 542 U.S. 466, 489 (2004). Under 28 U.S.C. § 1331, federal courts have original jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States." Cases "arise under" federal law either when federal law creates the cause of action or where the vindication of a right under state law necessarily turns on the construction of federal law. *Republican Party of Guam v. Gutierrez*, 277 F.3d 1086, 1088-89 (9th Cir. 2002). Whether federal-question jurisdiction exists is based on the "well-pleaded complaint rule," which provides that "federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint."

*Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987). Under 28 U.S.C. § 1332(a), federal district courts have original jurisdiction over civil actions in diversity cases "where the matter in controversy exceeds the sum or value of $75,000" and where the matter is between "citizens of different states." Generally speaking, diversity jurisdiction exists only where there is "complete diversity" among the parties; each of the plaintiffs must be a citizen of a different state than each of the defendants. *Caterpillar Inc. v. Lewis*, 519 U.S. 61, 68 (1996).

**II.     Discussion.**

Plaintiff's claims arise out of his extradition from detention in California to detention in Nevada in 2002. He sues Washoe County Sheriff Dennis Balaam, Washoe County Sheriff Darin Balaam, Governor Joe Lombardo, Nevada Department of Corrections ("NDOC") Director James Dzurenda, Lovelock Correctional Center ("LCC") Associate Warden Kara Le Grand, and Southern Desert Correctional Center ("SDCC") Warden Oliver for damages, alleging six causes of action related to his claim that Defendants prevented his return to California for more than twenty years by destroying and concealing his extradition files.

   *A.     Claim 1.*

Plaintiff's first cause of action is titled "pretransfer hearing under Interstate Agreement on Detainer Act ([IAD]) Cal. Penal Code § 1389 – 1389.1 and Uniform Criminal Extradition Act (U.C.E.A.) Cal. Penal Code § 1548 – 1556.2." (ECF No. 24-1 at 5). Plaintiff alleges that he was in custody in Fresno, California pending charges in that county when the then-Governor of Nevada empowered Sheriff Dennis Balaam to receive Plaintiff. Plaintiff states that he was then removed from California to Nevada on July 26, 2022 without the hearing to which he is entitled under the Extradition Act. Plaintiff claims that "Nevada authorities" destroyed his original extradition file.

The Court already allowed this claim to proceed against Sheriff Dennis Balaam and the Doe Governor of Nevada. (ECF No. 6 at 5). Plaintiff has amended this claim to name the Governor of Nevada. This claim thus proceeds against Sheriff Dennis Balaam and Governor Joe Lombardo.

**B.     Claim 2.**

Plaintiff's second cause of action is titled "speedy trial under UCEA, [IAD], 6th Amend and 14th Amend U.S. Constitution." (ECF No. 24-1 at 6). Plaintiff points out that the Court previously dismissed this claim with prejudice under the International Agreement on Detainers, but dismissed it without prejudice under the UCEA. Plaintiff asserts that "[a]ll procedural safeguards provided by UCEA are preserved to a prisoner subject to the Agreement on Detainers [such that] these procedural safeguards could not coexist one without the other."

Plaintiff alleges that he was brought to Nevada for the sole purpose of affording him a speedy trial. But although he arrived in Nevada on July 26, 2002, he was then held over 1,700 days in Sheriff Balaam's custody without trial. He asserts that Defendants never informed the Court that Plaintiff had arrived in Nevada under the Extradition Agreement, including during a hearing on June 21, 2012 and "more than 40" other opportunities. He adds that Defendants destroyed or concealed court filings, including Plaintiff's *habeas corpus* action that he filed on July 30, 2008, which the clerk of court stated that the court never received. Plaintiff asserts that this violated his due process rights under the United States and Nevada constitutions because he was not brought to trial within the 120-day time limit.

The Court already dismissed Plaintiff's UCEA claim because Plaintiff was suing about a speedy trial issue under the IAD. The Court does the same here.

The United States Supreme Court has explained the difference between the Interstate Agreement on Detainers and the Uniform Criminal Extradition Act as follows:

> The Interstate Agreement on Detainers, [codified in Nevada at NRS 178.620-178.640], is a compact among 48 States, the District of Columbia, and the United States… [T]he Agreement establishes procedures by which one jurisdiction may obtain temporary custody of a prisoner incarcerated in another jurisdiction for the purpose of bringing that prisoner to trial. Unlike the Extradition Act, the Detainer Agreement establishes procedures under which a prisoner may initiate his transfer to the receiving State and procedures that ensure protection of the prisoner's speedy trial rights.
>
> The Uniform Criminal Extradition Act, [codified in Nevada at NRS 179.177-179.235], has been adopted by 48 States, Puerto Rico, and

> the Virgin Islands…. [T]he Extradition Act, like the Detainer Agreement, establishes procedures for the interstate transfer of persons against whom criminal charges are outstanding. Unlike the Detainer Agreement, the Extradition Act applies to persons at liberty as well as to persons in prison.

*Cuyler v. Adams*, 449 U.S. 433, 436 (1981)

A plaintiff may bring a 42 U.S.C. § 1983 claim against state officials for violations of the IAD. *Id.* at 450. The Agreement on Detainers preserves to a prisoner the procedural safeguards granted by the Uniform Criminal Extradition Act, NRS 179.177 et seq., except those expressly withheld by the Agreement on Detainers itself. *Director, Nevada Dept. of Prisons v. Blum*, 639 P.2d 559, 559-60 (Nev. 1982) (citing *Cuyler*, 449 U.S. at 447). The IAD "creates uniform procedures for lodging and executing a detainer, *i.e.*, a legal order that requires a State in which an involved individual is currently imprisoned to hold that individual when he has finished serving his sentence so that he may be tried by a different State for a different crime." *Alabama v. Bozeman*, 533 U.S. 146, 148 (2001). "The [IAD] provides for expeditious delivery of the prisoner to the receiving State for trial prior to the termination of his sentence in the sending State. And it seeks to minimize the consequent interruption of the prisoner's ongoing prison term." *Id.*

The IAD "basically (1) gives a prisoner the right to demand a trial within 180 days; and (2) gives a State the right to obtain a prisoner for the purposes of trial, in which case the State (a) must try the prisoner within 120 days of his arrival, and (b) must not return the prisoner to his 'original place of imprisonment' prior to that trial." *Id.* at 151 (citing Article III and IV of the IAD, respectively). Under Article III, the warden must notify the prisoner of all outstanding detainers and then inform him of his right to request final disposition of the criminal charges underlying those detainers. *Cuyler*, 449 U.S. at 444. If the prisoner initiates the transfer by demanding disposition (which under the IAD automatically extends to all pending charges in the receiving State), the authorities in the receiving State must bring him to trial within 180 days or the charges will be dismissed with prejudice, absent good cause shown. *Id.*

Here, while Plaintiff argues that the Court should allow him to proceed on his UCEA claim, he does not point to any provision of Nevada's adoption of that Act that provides a right to

a speedy trial. Instead, The IAD provides that speedy trial right through its guarantee of trial within either 180 or 120 days. So, the Court again dismisses Plaintiff's UCEA claim without prejudice.

The Court dismisses Plaintiff's claims for speedy trial under the IAD, the Sixth Amendment, and the Fourteenth Amendment without prejudice. Plaintiff has alleged a cognizable violation of the IAD because he was not tried for over 180 days. Similarly, Plaintiff has alleged a colorable violation of the Sixth and Fourteenth Amendment rights to a speedy trial. But Plaintiff has not explained if he was ultimately tried, when, and the outcome of those claims. So, the Court cannot decide these claims under the *Younger* and *Heck* abstention doctrines. *See Younger v. Harris*, 401 U.S. 37 (1971); *see Heck v. Humphrey*, 512 U.S. 477 (1994); *see Brackett v. Anderson*, No. 2:21-cv-02282-KJM-JD-PPC, 2024 WL 2058814, at *3 (E.D. Cal. May 8, 2024).

It is well established that federal courts should not intervene with state cases absent extraordinary circumstances. *See Younger v. Harris*, 401 U.S. 37, 43 (1971) ("[s]ince the beginning of this country's history Congress has, subject to few exceptions, manifested a desire to permit state courts to try state cases free from interference by federal courts."). The *Younger* abstention doctrine is premised upon a fundamental "public policy against federal court interference with state court proceedings." *Id.* at 43. Here, plaintiff has an adequate remedy at law because he may pursue his speedy trial claim in the state court proceeding (if the proceeding is still on-going). Plaintiff's request for a speedy trial should be presented to the state court where his trial is pending; this Court should not interfere.

If, however, Plaintiff's state court proceedings are no longer ongoing, this Court cannot award him damages in this § 1983 action because he has not demonstrated that his conviction or sentence has been invalidated. If this Court were to grant a judgment in favor of Plaintiff, it would imply that his state court conviction is invalid, therefore making his request for damages inappropriate and subject to dismissal. *See Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994); *Thomas v. Pugh*, 9 F. App'x 370 (6th Cir. 2001) (finding a pre-trial detainee's § 1983 claim that he was denied a speedy trial to be barred by *Heck*); *Munywe v. Peters*, No. 3:20-cv-05431BJR-

JRC, 2022 WL 2975010, at *6 (W.D. Wash. Jan. 24, 2022) (dismissing the plaintiff's speedy trial claim because it called into question the validity of the plaintiff's underlying conviction and was therefore *Heck*-barred); *Gibbs v. Contra Costa Cnty.*, No. C 11-00403-MEJ, 2011 WL 1899406, at *3 (N.D. Cal. May 19, 2011) (dismissing a speedy trial claim because such claim "necessarily implies" the invalidity of the plaintiff's conviction and such conviction has not been reversed or invalidated).

Because Plaintiff does not explain whether the proceeding is ongoing, the Court cannot determine whether it is appropriate for it to interfere. Plaintiff appears to infer later in his complaint that his term in Nevada custody "terminated" on May 1, 2007. But even if Plaintiff's case is not ongoing, Plaintiff does not explain whether his conviction has been reversed or invalidated such that Plaintiff's § 1983 claim is not barred by *Heck*. The Court thus dismisses Plaintiff's IAD, Sixth Amendment, and Fourteenth Amendment speedy trial claims without prejudice and with leave to amend.

### C.     Claim 3.

Plaintiff's third cause of action is titled "wrongly held in Nevada; false imprisonment and malicious prosecution; and cruel and unusual punishment in violation under UCEA, [IAD], 5th, 6th, 8th, and 14th Amend U.S. Constitution." (ECF No. 24-1 at 7). Plaintiff alleges that Defendants failed to return him to California on May 1, 2007 when his five years in Sheriff Balaam's custody terminated. Plaintiff reiterates that Defendants concealed his extradition files from the courts. He asserts that Defendants kept him in NDOC custody in an attempt to cover up their legal violations, resulting in false imprisonment; malicious prosecution; cruel and unusual punishment; violation of Plaintiff's Fifth, Sixth, Eighth, and Fourteenth Amendment rights; and violation of the NDOC Director's obligations under NRS 178.630 and NRS 204.131 to receive and release offenders.

Plaintiff's claims here fail for the same reason as his claims under Claim 2. While Plaintiff asserts that "his almost 5 years in custody of Sheriff Balaam's process terminated," suggesting that his criminal proceedings in Nevada are no longer ongoing, it is not clear based on this allegation whether he was convicted and, if so, if that conviction has been reversed or

invalidated. Without this explanation, Plaintiff's constitutional, UCEA, and IAD claims—which arise under 42 U.S.C. § 1983—are barred by *Heck*. The Court thus dismisses these claims without prejudice and with leave to amend.

### D. Claim 4.

Plaintiff's fourth cause of action is titled "excessive fines under [IAD] as NRS 178.620; Uniform Criminal Extradition Act (UCEA) as NRS 179.187.1; NRS 179.225.1(c) and 8th Amendment of the United States Constitution." (ECF No. 24-1 at 8). Plaintiff alleges that, Nevada should be responsible for the cost of transporting, caring for, and returning Plaintiff during the extradition. But Defendants—through the Governor's empowerment of Sheriffs Dennis Balaam and Darin Balaam to receive Plaintiff—violated the IAD, the UCEA, and the Eighth Amendment by withdrawing these fees from Plaintiff's prison trust account.

Under Article V(h) of Nevada's UCEA, "[f]rom the time that a party state receives custody of a prisoner pursuant to this agreement until such prisoner is returned to the territory and custody of the sending state, the state in which the one or more untried indictments, informations, or complaints are pending or in which trial is being had shall be responsible for the prisoner and shall also pay all costs of transporting, caring for, keeping, and returning the prisoner." NRS 178.620, Art. V(h). However, NRS 179.225 mandates that, if the prisoner is able to pay, the prisoner reimburse the state for those costs. *See* NRS 179.225(3) (stating that, if the person returned to this State is able to pay, the court shall "order the person to make restitution for the expenses incurred by the Office of the Attorney General or other governmental entity in returning the person to this State.").

Plaintiff has not explained whether, for example, the prison is deducting money from his trust account without a court order under NRS 179.225. He has also not explained how the deductions are illegal or improper given NRS 179.225's explanation that prisoners removed to this state can be ordered to pay the state's expenses in removing the prisoner. Without more, Plaintiff has not alleged a colorable claim that Defendants have violated Nevada's UCEA or IAD under 42 U.S.C. § 1983.

Plaintiff has also not alleged a colorable claim for violation of his Eighth Amendment rights by these deductions. The Eighth Amendment's prohibition against cruel and unusual punishment protects prisoners not only from inhumane methods of punishment but also from inhumane conditions of confinement. *Morgan v. Morgensen*, 465 F.3d 1041, 1045 (9th Cir. 2006). While conditions of confinement may be, and often are, restrictive and harsh, they must not involve the wanton and unnecessary infliction of pain. *Id.* (citing *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)) (quotation marks omitted). Thus, conditions which are devoid of legitimate penological purpose or contrary to evolving standards of decency that mark the progress of a maturing society violate the Eighth Amendment. *Morgan*, 465 F.3d at 1045 (quotation marks and citations omitted); *Hope v. Pelzer*, 536 U.S. 730, 737 (2002); *Rhodes*, 452 U.S. at 346.

Prison officials have a duty to ensure that prisoners are provided adequate shelter, food, clothing, sanitation, medical care, and personal safety, *Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir. 2000) (quotation marks and citations omitted), but not every injury that a prisoner sustains while in prison represents a constitutional violation, *Morgan*, 465 F.3d at 1045 (quotation marks omitted). To maintain an Eighth Amendment claim, a prisoner must show that prison officials were deliberately indifferent to a substantial risk of harm to his health or safety. E.g., *Farmer v. Brennan*, 511 U.S. 825, 847 (1994); *Thomas v. Ponder*, 611 F.3d 1144, 1150–51 (9th Cir. 2010); *Foster v. Runnels*, 554 F.3d 807, 812–14 (9th Cir. 2009); *Morgan*, 465 F.3d at 1045; *Johnson*, 217 F.3d at 731; *Frost v. Agnos*, 152 F.3d 1124, 1128 (9th Cir. 1998). Plaintiff's allegations that funds were improperly deducted from his trust account do not demonstrate that he was at a serious risk of harm. Plaintiff's allegations regarding deprivation of his property do not arise under the Eighth Amendment. *See Alexander v. Hicks*, No. 1:16-cv-01832-AWI-SAB (PC), 2017 WL 1356071, at *2 (E.D. Cal. Apr. 6, 2017).

Plaintiff has not alleged a colorable claim under Nevada's IAD, Nevada's UCEA, or the Eighth Amendment. The Court thus dismisses Plaintiff's fourth claim without prejudice and with leave to amend.

### E. Claim 5.

Plaintiff's fifth cause of action is titled "transfer in retaliation for bring litigation and for exercising constitution rights. Violations under the First Amend Petition Clause Privileges and Immunities of Art IV of US Constitution, Fifth Amend and Fourteenth Amend US. Constitution."[1] (ECF No. 24-1 at 9). Plaintiff alleges that he was in LCC custody when he received a copy of the Governor's warrant under which he was brought to Nevada. Plaintiff filed a copy of this warrant with the Nevada Supreme Court in connection with an action seeking a writ of mandamus. Plaintiff also filed the document with LCC's administration via his caseworker and the Offender Management office at NDOC. Plaintiff asserts that Defendants responded to Plaintiff's petition for a writ of mandamus by falsely ensuring the court that Plaintiff was on his way back to California. Plaintiff then filed a petition for writ of certiorari to the United States Supreme Court. But before Plaintiff received the United States Supreme Court's decision on his petition for writ of certiorari, he was removed from LCC's custody on April 25, 2022 under Warden Le Grand's instruction. Plaintiff asserts that this transfer was in retaliation for his litigation.

That same day, Plaintiff arrived at SDCC. Two days later, when he was escorted to the property room, an unknown inmate assaulted him. Plaintiff was then placed in segregation under his caseworker's—who is not a party to this action—direction. Plaintiff asserts that Defendants collaborated to move him to SDCC in an effort to frustrate his efforts to return to California.

#### 1. The Privileges and Immunities Clause of Article IV, Section 2.

Article IV, Section 2, clause 1 of the Constitution—the Privileges and Immunities Clause—states that "the Citizens of each State shall be entitled to all Privileges and Immunities of Citizens in the several States." A challenge to a law under the Privileges and Immunities Clause entails a "two step inquiry." *Marilley v. Bonham*, 844 F.3d 841, 846 (9th Cir. 2016). At step one, the plaintiff bears the burden of showing that the challenged law falls within the purview of the

---

[1] Although not included in the heading of this claim, at the end, Plaintiff invokes the Sixth Amendment. However, the Court has already addressed and dismissed Plaintiff's speedy trial claim under the Sixth Amendment and thus does not address it here.

Privileges and Immunities Clause." *Id.* (internal quotations omitted). If the plaintiff makes the required step-one showing, at step two the burden shifts to the state to show that the challenged law is closely related to the advancement of a substantial state interest. *Id.* (internal quotations omitted).

Here, Plaintiff has not identified a law that he asserts violates the Privileges and Immunities Clause. Plaintiff has thus not alleged a colorable claim for violation of the clause. The Court dismisses this claim without prejudice and with leave to amend.

### 2. Fifth Amendment.

To the extent Plaintiff alleges that this claim arises under the Fifth Amendment, the Court dismisses it without prejudice. "The Due Process Clause of the Fifth Amendment and the equal protection component thereof apply only to actions of the federal government—not to those of state or local governments." *Lee v. City of Los Angeles*, 250 F.3d 668, 687 (9th Cir. 2001); *see Williams v. McCoy*, No. 3:22-cv-00376-ART-CLB, 2022 WL 22330391, at *5 (D. Nev. Oct. 24, 2022). Because Plaintiff is not suing federal officials, his claims do not arise under the Fifth Amendment and the Court dismisses this claim without prejudice and with leave to amend.

### 3. Fourteenth Amendment Due Process.

Plaintiff does not specify the provision of the Fourteenth Amendment under which he brings this claim. However, because he does not mention unequal treatment, the Court construes him as bringing his claim under the Fourteenth Amendment Due Process clause. However, "the Constitution itself does not give rise to a liberty interest in avoiding transfer to more adverse conditions of confinement." *Wilkinson v. Austin*, 545 U.S. 209, 221–22 (2005). The Due Process Clause does not "protect a duly convicted prisoner against transfer from one institution to another within the state prison system." *Meachum v. Fano*, 427 U.S. 215, 225 (1976). "Confinement in any of the State's institutions is within the normal limits of range of custody [that] the conviction has authorized the State to impose." *Id.* Indeed, "[t]hat life in one prison is much more disagreeable than in another does not itself signify that a Fourteenth Amendment liberty interest is implicated when a prisoner is transferred to the institution with more severe rules." *Id.* Here, because Plaintiff did not have a liberty interest in remaining at the Lovelock Correctional Center,

he does not state a colorable Fourteenth Amendment due process claim. The Court thus dismisses his Fourteenth Amendment due process claim without prejudice and with leave to amend.

          4.      <u>First Amendment.</u>

In making a claim of First Amendment retaliation a prisoner must satisfy the following five elements: (1) an assertion that a state actor took some adverse action against an inmate; (2) because of; (3) that prisoner's protected conduct and that such action; (4) chilled the inmate's exercise of his First Amendment rights; and (5) the action did not reasonably advance a legitimate correctional goal. *Rhodes v. Robinson*, 408 F.3d 559, 567–68 (9th Cir. 2005); *see, e.g.*, *Resnick v. Hayes*, 213 F.3d 443, 449 (9th Cir. 2000); *Barnett v. Centoni*, 31 F.3d 813, 815–16 (9th Cir. 1994). The plaintiff must provide evidence showing that the actions of the defendant "deterred or chilled [the plaintiff's] political speech and that such deterrence was a substantial or motivating factor in [the defendant's] conduct." *Mendocino Env'l Ctr. v. Mendocino County*, 192 F.3d 1283, 1300 (9th Cir. 1999). This may be demonstrated through "either direct or circumstantial evidence" and does not require that the speech be completely chilled, rather the element only requires a "demonstration that the defendant intended to interfere with [the plaintiff's] First Amendment rights." *Id.* at 1300–01. As stated by the Ninth Circuit, it would be "unjust to allow a defendant to escape liability for a First Amendment violation merely because an unusually determined plaintiff persists in his protected activity." *Id.* at 1300. The "proper inquiry asks 'whether an official's acts would chill or silence a person of ordinary firmness from future First Amendment activities.'" *Id.*; *see Downing v. Graves*, No. 2:12-CV-00332-JCM, 2014 WL 2565677, at *3 (D. Nev. June 6, 2014), *aff'd but criticized*, 668 F. App'x 295 (9th Cir. 2016).

Here, Plaintiff has not alleged a colorable claim for First Amendment retaliation. Plaintiff alleges that Warden Le Grand moved him to a different facility because of Plaintiff's legal activities in trying to return to California. Plaintiff appears to allege that he was exposed to the inmate who assaulted him as part of the retaliatory actions, but does not explain if Warden Le Grand caused the interaction or if it was coincidental. The Court liberally construes Plaintiff's complaint as alleging that the action did not advance a legitimate correctional goal. However,

Plaintiff has not alleged that his First Amendment rights were chilled. To the contrary, Plaintiff has filed the instant action and is actively engaged in prosecuting it. Without additional facts, the Court cannot find that Plaintiff has alleged a colorable claim for First Amendment retaliation and thus dismisses this claim without prejudice and with leave to amend.

### F.     Claim 6.

Plaintiff's sixth cause of action is titled "access to the courts – under Privilege and Immunities Clause of Article IV of the Constitution, the First Amend Petition Clause, the Fifth Amend Due Process Clause, and the Fourteenth Amend Equal Protection and Due Process Clauses." (ECF No. 24-1 at 10). Plaintiff alleges that, while he was in segregation following the assault, he requested his legal materials but that the Southern Desert Correctional Center law library failed to provide them for months, causing Plaintiff to miss a deadline and forcing him to re-start his legal proceedings in his state court habeas proceeding. Plaintiff asserts that the Southern Desert Correctional Center law library has also failed to provide him with forms he has requested and has provided him faulty information, frustrating his right to access the courts. Plaintiff adds that he has been held in segregation from April 27, 2022 until February 4, 2023 and again from March 26, 2023 until July 21, 2023 without access to the yard in retaliation for his lawsuits. Plaintiff alleges that Warden Oliver is responsible for depriving him of his access to the courts because Warden Oliver is responsible for ensuring that inmates have reasonable access to the law library.

#### 1.     The Privileges and Immunities Clause of Article IV, Section 2.

Here, as in his fifth claim, Plaintiff has not identified a law that he believes violates the Privileges and Immunities Clause. For the same reasons as articulated above, the Court dismisses this claim without prejudice and with leave to amend.

#### 2.     First and Fourteenth Amendment Due Process Clause.

Prisoners have a right under the First and Fourteenth Amendments to litigate their claims "without *active interference* by prison officials." *Silva v. Di Vittorio*, 658 F.3d 1090, 1103 (9th Cir. 2011) (emphasis in original), *overruled on other grounds as stated in Richey v. Dahne*, 807 F.3d 1202, 1209 n.6 (9th Cir. 2015); *see Carey v. Von Blanckensee*, 515 F. Supp. 3d 1051, 1059

(D. Ariz. 2021). The touchstone of the right of access to courts is the "adequate opportunity to file nonfrivolous legal claims challenging ... convictions or conditions of confinement." *Lewis v. Casey*, 518 U.S. 343, 356 (1996). Thus, the official acts or omissions complained of must result in "actual prejudice with respect to contemplated or existing litigation, such as the inability to meet a filing deadline or to present a claim." *Id.* at 348 (internal quotation marks omitted). The actual prejudice requirement, however, "is not satisfied by just any type of frustrated legal claim." *Id*. at 354. Rather, the types of legal claims protected are limited to direct criminal appeals, petitions for writs of habeas corpus, and civil rights actions brought under § 1983 to vindicate basic constitutional rights. *See id*. at 355-56. "Impairment of any *other* litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration." *Id*. at 355 (emphasis omitted).

Claims of denial of access to courts generally fall into two categories: (1) claims arising from an official frustrating a plaintiff from preparing and filing a lawsuit in the present, *i.e.*, a forward-looking claim; or (2) claims arising from an official causing the loss of a meritorious claim that can no longer be pursued, *i.e.*, a backward-looking claim. *Christopher v. Harbury*, 536 U.S. 403, 412-15 (2002). When a prisoner asserts a backward-looking claim, "he must show: (1) the loss of a 'non-frivolous' or 'arguable' underlying claim; (2) the official acts frustrating the litigation; and (3) a remedy that may be awarded as recompense but that is not otherwise available in a future suit." *Phillips v. Hust*, 477 F.3d 1070, 1076 (9th Cir. 2007) (citing *Christopher*, 536 U.S. at 413-14), *vacated on other grounds by Hust v. Phillips*, 555 U.S. 1150 (2009).

Here, Plaintiff has alleged a colorable claim for denial of access to the courts against Warden Oliver. Plaintiff alleges that the SDCC law library failed to timely provide him the documents needed to pursue his state court habeas case, forcing him to start over. While his connection between Warden Oliver and the law library is somewhat attenuated, for the purposes of screening, Plaintiff has adequately alleged that Warden Oliver failed to oversee the law library in a way that resulted in Plaintiff's lack of access to the courts. This is sufficient to state a First Amendment and Fourteenth Amendment denial of access to the courts claim.

3.     Fifth Amendment.

Plaintiff's Fifth Amendment claim fails here because, as stated above, Plaintiff is not suing federal officials. The Court thus dismisses this claim without prejudice and with leave to amend.

4.     Fourteenth Amendment Equal Protection.

Although Plaintiff invokes the Equal Protection Clause, Plaintiff does not allege facts that demonstrate that Defendants acted with the intent and purpose to discriminate against him based upon membership in a protected class or that Defendants purposefully treated him differently than similarly situated individuals without any rational basis for the disparate treatment. *See Lee v. City of Los Angeles*, 250 F.3d 668, 686 (9th Cir. 2001); *see also Vill. Of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). As a result, Plaintiff does not allege a colorable claim under the Fourteenth Amendment Equal Protection Clause and the Court dismisses this claim without prejudice.

**IT IS THEREFORE ORDERED** that Plaintiff's motion to amend his complaint (ECF No. 24) is **granted in part and denied in part.**

**IT IS FURTHER ORDERED** that the Clerk of Court is kindly directed to file Plaintiff's complaint (ECF No. 24-1) on the docket and issue summonses to Warden Oliver, Sheriff Dennis Balaam, and Governor Joe Lombardo.

**IT IS FURTHER ORDERED** that the following procedures shall govern service on Warden Oliver:

- The Clerk of Court is kindly directed to electronically serve a copy of this order, the summons issued to Warden Oliver, and a copy of Plaintiff's amended complaint (ECF No. 24-1) on the Office of the Attorney General of the State of Nevada. This does not indicate acceptance of service for Warden Oliver.
- On or before **June 14, 2024** the Attorney General's Office shall file a notice advising the Court and Plaintiff whether it accepts service for Warden Oliver. If the Attorney General's Office does not accept service for Warden Oliver, the

Attorney General's Office must file Warden Oliver's last known address under seal and indicate that it has filed this information under seal in a publicly-filed notice. If Warden Oliver's last known address is a post office box, the Attorney General's Office shall attempt to obtain and provide the last known physical address.

- If the Attorney General's Office cannot accept service for Warden Oliver, Plaintiff shall file a motion requesting issuance of summons for Warden Oliver.

- If the Attorney General's Office has not provided a last-known address for Warden Oliver, Plaintiff shall provide Warden Oliver's full name and address in his motion.

- If the Attorney General's Office accepts service of process for Warden Oliver, Warden Oliver shall file and serve an answer or other response to the amended complaint on or before **June 24, 2024**.

**IT IS FURTHER ORDERED** that the following procedures shall govern service on Governor Joe Lombardo:

- The Clerk of Court is kindly directed to send the United States Marshals Service ("USMS") a copy of this order, two copies of Plaintiff's complaint (ECF No. 24-1), and two copies of the summons to Governor Joe Lombardo.

- The Clerk of Court is kindly directed to send Plaintiff two blank copies of the Form USM-285.

- Plaintiff must complete one Form USM-285 to be served on Governor Joe Lombardo at the Attorney General's Office and one to be served on Governor Joe Lombardo or an agent designated by him to receive service of process.[2]

---

[2] Under Nevada Rule of Civil Procedure 4.2(d)(2), "[a]ny current or former public officer or employee of the State who is sued in his or her official capacity or his or her individual capacity for an act or omission relating to his or her public duties or employment must be served by delivering a copy of the summons and complaint to: (A) the Attorney General, or a person designated by the Attorney General to receive service of process, at the Office of the Attorney

- Plaintiff shall have until **June 14, 2024** to send the USMS the two required Forms USM-285 for Governor Joe Lombardo.
- Within twenty-one days after receiving a copy of the Forms USM-285 back from the USMS showing whether service has been accomplished, Plaintiff must file a notice with the Court identifying whether Governor Joe Lombardo was served.
- If Plaintiff wishes to have service again attempted on Governor Joe Lombardo, the Plaintiff must file a motion with the Court identifying Governor Joe Lombardo and specifying a more detailed name and/or address for him or whether some other manner of service should be attempted.

**IT IS FURTHER ORDERED** that the following procedures shall govern service on Sheriff Dennis Balaam:

- The Clerk of Court is kindly directed to send the USMS a copy of this order, a copy of Plaintiff's complaint (ECF No. 24-1), and a copy of the summons to Sheriff Dennis Balaam.
- The Clerk of Court is kindly directed to send Plaintiff a blank copy of Form USM-285.
- Plaintiff shall have until **June 14, 2024** to send the USMS the required Form USM-285 for Sheriff Dennis Balaam.
- Within twenty-one days after receiving a copy of the Form USM-285 back from the USMS showing whether service has been accomplished, Plaintiff must file a notice with the Court identifying whether Sheriff Dennis Balaam was served.
- If Plaintiff wishes to have service again attempted on Sheriff Dennis Balaam, the Plaintiff must file a motion with the Court identifying Sheriff Dennis Balaam and specifying a more detailed name and/or address for him or whether some other manner of service should be attempted.

---

General in Carson City; and (B) the current or former public officer or employee, or an agent designated by him or her to receive service of process."

**IT IS FURTHER ORDERED** that Plaintiff shall have until **August 22, 2024** within which to serve Warden Oliver, Governor Joe Lombardo, and Sheriff Dennis Balaam. Fed. R. Civ. P. 4(m).

**IT IS FURTHER ORDERED** that the below claims are dismissed without prejudice and with leave to amend:

- Plaintiff's speedy trial claim brought under Nevada's Uniform Criminal Extradition Act, Nevada's International Agreement on Detainers, the Sixth Amendment, and the Fourteenth Amendment (Claim 2).
- Plaintiff's false imprisonment, malicious prosecution, and cruel and unusual punishment claims brought under Nevada's Uniform Criminal Extradition Act, Nevada's International Agreement on Detainers, the Fifth Amendment, the Sixth Amendment, the Eighth Amendment, and the Fourteenth Amendment (Claim 3).
- Plaintiff's excessive fines claim brought under Nevada's International Agreement on Detainers, Nevada's Uniform Criminal Extradition Act, and the Eighth Amendment (Claim 4).
- Plaintiff's retaliation claim brought under the Privileges and Immunities Clause of Article IV, Section 2; the Fifth Amendment; the Fourteenth Amendment Due Process Clause; and the First Amendment (Claim 5).
- Plaintiff's access-to-the-courts claim brought under the Privileges and Immunities Clause of Article IV, Section 2; the Fifth Amendment; and the Fourteenth Amendment Equal Protection Clause (Claim 6).

///
///
///

**IT IS FURTHER ORDERED** that the below claims shall proceed:

- Plaintiff's claim under the California Interstate Agreement on Detainer and the California Uniform Criminal Extradition Act against Sheriff Dennis Balaam and Governor Joe Lombardo (Claim 1).
- Plaintiff's access-to-the-courts claim brought under the First Amendment and the Fourteenth Amendment Due Process Clause against Warden Oliver (Claim 6).

DATED: May 24, 2024

---
DANIEL J. ALBREGTS
UNITED STATES MAGISTRATE JUDGE